UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARYL WALDON,

       Petitioner,

          CASE NO. 4:12-CV-14649
v.           JUDGE GERSHWIN A. DRAIN
          MAGISTRATE JUDGE PAUL J. KOMIVES

SHERRY BURT,

       Respondent.[1]

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

| | | |
|---|---|---|
| I. | RECOMMENDATION | 2 |
| II. | REPORT | 2 |
| | A.    *Procedural History* | 2 |
| | B.    *Factual Background Underlying Petitioner's Conviction* | 4 |
| | C.    *Procedural Default* | 4 |
| | D.    *Standard of Review* | 7 |
| | E.    *Confrontation Claims (Claims I & II)* | 10 |
| |      1.    *Clearly Established Law* | 10 |
| |      2.    *Analysis* | 14 |
| |          a. Lab Technician Testimony | 14 |
| |          b. Officer Richardson's Testimony | 16 |
| | F.    *Failure to Give Manslaughter Instruction (Claim III)* | 18 |
| | G.    *Ineffective Assistance of Counsel (Claims IV & V)* | 21 |
| |      1.    *Clearly Established Law* | 21 |
| |      2.    *Trial Counsel* | 23 |
| |          a. Failing to Raise Confrontation Objections | 24 |
| |          b. Failing to Object to Irrelevant Evidence | 25 |
| |          c. Eliciting Harmful Testimony | 26 |
| |      3.    *Appellate Counsel* | 28 |
| | H.    *Recommendation Regarding Certificate of Appealability* | 28 |
| |      1.    *Legal Standard* | 28 |
| |      2.    *Analysis* | 30 |
| | I.    *Conclusion* | 31 |
| III. | NOTICE TO PARTIES REGARDING OBJECTIONS | 31 |

---

    [1]By Order entered this date, Sherry Burt has been substituted in place of Paul Klee as the proper respondent in this action.

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.     <u>REPORT</u>:

A.      *Procedural History*

1.      Petitioner Daryl Waldon is a state prisoner, currently confined at the Muskegon Correctional Facility in Muskegon, Michigan.

2.      On December 8, 2006, petitioner was convicted of second degree murder, MICH. COMP. LAWS § 750.317; two counts of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, and three counts of possession of a firearm with intent to commit a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Macomb County Circuit Court. On January 25, 2007, he was sentenced to a term of 31-50 years' imprisonment on the second degree murder conviction, concurrent sentences of 15-30 years' imprisonment on the assault convictions, and a mandatory consecutive term of two years' imprisonment on the felony-firearm convictions.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claim:

> DEFENDANT-APPELLANT IS ENTITLED TO A NEW TRIAL WHERE THE JURY WAS NOT PROPERLY INSTRUCTED.

The court of appeals found no merit to petitioner's claim, and affirmed his convictions and sentences. *See People v. Waldon*, No. 276152, 2008 WL 1914788 (Mich. Ct. App. May 1, 2008) (per curiam).

4.      Petitioner, through counsel, sought leave to appeal this issue to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Waldon*, 482 Mich. 977, 754 N.W.2d 887 (2008).

2

5.     On September 9, 2009, petitioner filed a motion for relief from judgment in the trial

court pursuant to MICH. CT. R. 6.500-.508 raising, through counsel, the following claims:

I.      TESTIMONY OF ONE LAB WORKER ABOUT THE FINDINGS OF
        ANOTHER LAB WORKER VIOLATED DEFENDANT'S HEARSAY
        AND CONFRONTATION RIGHTS.

II.     POLICE TESTIMONY THAT A PERSON IN THE CROWD DECLARED
        THE SHOOTING WAS DONE BY DARYL WALDON VIOLATED HIS
        HEARSAY AND CONFRONTATION RIGHTS.

III.    THE TRIAL COURT DENIED DEFENDANT DUE PROCESS OF LAW
        BY REFUSING TO INSTRUCT ON THE DEFENSE THAT THE CRIME
        WAS ONLY MANSLAUGHTER AND NOT MURDER.

IV.     DEFENDANT WAS PREJUDICED BY INEFFECTIVE ASSISTANCE OF
        COUNSEL AT TRIAL.

V.      DEFENDANT WAS PREJUDICED BY INEFFECTIVE ASSISTANCE OF
        COUNSEL ON APPEAL.

On March 10, 2010, the trial court denied petitioner's motion for relief from judgment, concluding

that petitioner's claims were barred by MICH. CT. R. 6.508(D)(3) because he could not show good

cause and actual prejudice for his failure to raise the claims on direct appeal, and that the claims

were without merit.  *See People v. Waldon*, No. 2006-0383-FC (Macomb County, Mich., Cir. Ct.

Mar. 10, 2010) [hereinafter "Trial Ct. op."].  The Michigan Court of Appeals and Michigan Supreme

Court denied petitioner's applications for leave to appeal in standard orders.  *See People v. Waldon*,

492 Mich. 853, 817 N.W.2d 92 (2012); *People v. Waldon*, No. 302992 (Mich. Ct. App. Nov. 22,

2011).

6.     Petitioner, through counsel, filed the instant application for a writ of habeas corpus

on October 21, 2012.  As grounds for the writ of habeas corpus, he raises the five claims that he

raised in his motion for relief from judgment.

3

7.     Respondent filed her answer on January 25, 2013.  She contends that all but petitioner's jury instruction claims are barred by petitioner's procedural default in the state courts, and that all of petitioner's claims are without merit.

8.     Petitioner filed a reply to respondent's answer on February 25, 2013.

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from a shooting at a party in the early morning hours of New Year's, 2006.  The evidence adduced at trial was summarized by the Michigan Court of Appeals:

> Defendant's convictions stem from a shooting that occurred at a New Year's Eve celebration on January 1, 2006, at a dance hall. According to prosecution witnesses, defendant intended to shoot Erron Purry, and did so four times. However, while shooting at Purry, defendant also shot and killed Anthony McCommons, and wounded a woman in the leg.
> Purry testified that he was on the dance floor at approximately 2:00 a.m. when defendant bumped into him. Purry recognized defendant from middle and high school and the neighborhood, and thought that the "bump" was "aggressive" rather than a "dancing bump". Purry retaliated by pushing defendant away from him. After he pushed defendant away, defendant drew a handgun and shot at him. As Perry tried to get away, he was shot several times, including once in the back. During cross-examination, Purry testified that he and defendant had not had any previous disagreements.[1] Other prosecution witnesses corroborated Purry's version of the shooting. Defendant presented the testimony of an eyewitness who stated that while defendant and Purry engaged in a minor altercation, they had ended it several minutes before the shooting occurred. The witness maintained that defendant did not shoot Purry or the others.

> [1]He did admit, however, that he had given defendant's name to the police in relation to a previous shooting.

*Waldon*, 2008 WL 1914788, at *1.

C.     *Procedural Default*

Respondent contends that all but petitioner's jury instruction claim (Claim III) are barred by petitioner's procedural default.   Although petitioner's first, second, and fourth claims are procedurally defaulted, the Court should conclude that petitioner's fifth claim alleging ineffective

assistance of appellate counsel is not barred, and that this conclusion requires the Court to consider each of the claims on the merits.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

The Michigan Court of Appeals and the Michigan Supreme Court both rejected petitioner's appeal based on his "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." The Sixth Circuit has held that the form orders used by the Michigan courts constitute unexplained orders which are ambiguous as to whether a procedural bar is being invoked, and thus a federal habeas court must "look through" these orders to the last reasoned state court judgment to determine if the claims are barred. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Here, the trial court clearly invoked Rule 6.508(D)(3) in rejecting petitioner's claims.

The trial court noted that pursuant to Rule 6.508(D)(3) it could not grant relief based on any claim that could have been raised on direct appeal unless petitioner demonstrated good cause for his failure to do so and actual prejudice. *See* Trial Ct. op., at 2. After discussing the merits of petitioner's claims, the court concluded that petitioner "has not established good cause or actual prejudice under the rules so as to permit him to now raise those issues." *Id*. at 4. This constitutes a clear and express invocation of the procedural bar set forth in Rule 6.508(D)(3). Contrary to respondent's argument, the fact that the trial court also "extensively discusse[d] the merits," Reply, at 3, does not alter this conclusion. The fact that the trial court considered the merits in an alternative holding does not alter the conclusion that the claims are defaulted. *See Harris*, 489 U.S. at 264 n.10; *Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000).

However, the Court should conclude that petitioner's ineffective assistance of appellate counsel claim is not procedurally defaulted. "Ineffective assistance of appellate counsel claims plainly cannot be raised on direct appeal as they do not arise before the appeal." *Riley v. Jones*, 476 F. Supp. 2d 696, 707 (E.D. Mich. 2007) (Lawson, J.) (citing *Hicks v. Straub*, 377 F.3d 538, 558 n.17 (6th Cir. 2004); *Tucker v. Renico*, 317 F. Supp. 2d 766, 772-73 (E.D. Mich. 2004) (Lawson, J.)); *see also*, *Whiting v. Burt*, 395 F.3d 602, 615 n.7 (6th Cir. 2005). As respondent notes, because petitioner was represented by different counsel on his application for leave to appeal to the Michigan Supreme Court, petitioner theoretically could have raised his appellate counsel claim in that application for leave to appeal. Respondent has, however, cited no cases suggesting that a failure to do so is enough for a claim to be defaulted. Nor has respondent shown that the Michigan Supreme Court generally considers arguments raised for the first time in an application for leave to appeal in that court. Accordingly, the Court should conclude that petitioner's ineffective assistance of appellate counsel

claim is not defaulted.

This being the case, notwithstanding petitioner's default it is necessary to consider the merits of all his claims. With respect to each claim petitioner raises, he contends that appellate counsel was ineffective. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).[2] Consideration of counsel's effectiveness, however, depends in part on consideration of petitioner's underlying claims. Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in

---

[2]Where ineffective assistance of counsel is asserted as cause to excuse a procedural default, the ineffective assistance claim which is asserted as cause must itself be both exhausted, *see Edwards*, 529 U.S. at 451-52 (discussing *Murray*, 477 U.S. at 489), and not procedurally defaulted, *see id*. at 452-53. While respondent contends that petitioner's ineffective assistance of appellate counsel claim is procedurally defaulted, as explained above the Court should reject this argument.

custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection

2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)).  Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence."  *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).  The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not

9

require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).[3]

E.    *Confrontation Claims (Claims I & II)*

In his first two claims, petitioner contends that his Sixth Amendment right to confront the witnesses was violated by the introduction of hearsay evidence.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Clearly Established Law*

The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. CONST. amend. VI. The Confrontation Clause is applicable to the states through the Fourteenth Amendment's Due Process Clause.  *See Pointer v. Texas*, 480 U.S. 400, 406 (1965).  At the time of petitioner's trial, the standard governing the admissibility of hearsay statements under the Confrontation Clause was that set forth in *Ohio v. Roberts*, 448 U.S. 56 (1980).  In *Roberts*, the Court explained that the

---

[3]Although the trial court found each of petitioner's claims to be defaulted, as explained above the trial court also addressed the merits of those claims in the alternative.  Where a state court addresses the merits as an alternative ground for decision notwithstanding its application of a procedural bar, the alternative merits adjudication is considered "on the merits" for purposes of § 2254(d) and is entitled to deference under the AEDPA.  *See Brooks v. Bagley*, 513 F.3d 618, 624-25 (6th Cir. 2008); *see also*, *Rolan v. Coleman*, 680 F.3d 311, 319-20 (3d Cir. 2012) (citing cases).

underlying purpose of the Confrontation Clause is similar to that of the hearsay rule, *i.e.*, to exclude

unreliable, out-of-court statements in criminal proceedings.  Thus, the Court reasoned:

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable.  Even then, his statement is admissible only if it bears adequate "indicia of reliability."  Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.  In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Roberts*, 448 U.S. at 66.  As the Court explained in *Roberts*, reliability is inferred if the evidence was

admitted pursuant to a firmly rooted hearsay exception.  The theory behind this presumption is that

these firmly rooted exceptions represent judgments, based on history and practice, that statements

made in certain circumstances are inherently trustworthy such that the "adversarial testing

[embodied in the Confrontation Clause] would add little to [their] reliability."  *Idaho v. Wright*, 497

U.S. 805, 821 (1990).  Thus, a hearsay exception is "firmly rooted" if it "rest[s] upon such solid

foundations that admission of virtually any evidence within [the exception] comports with the

substance of constitutional protection."  *Roberts*, 448 U.S. at 66 (internal quotation omitted).

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court abrogated *Roberts* as

applied to testimonial hearsay statements.  After surveying the historical development of the

Confrontation Clause and the jurisprudence interpreting it, the Supreme Court concluded that, under

a proper understanding of the Clause, "[t]estimonial statements of witnesses absent from trial have

been admitted only where the declarant is unavailable, and only where the defendant has had a prior

opportunity to cross-examine."  *Crawford*, 541 U.S. at 59.  The Court then explained that *Roberts*'s

allowance of testimonial statements based on their reliability, where there has been no opportunity

for cross-examination of the declarant, departed from this proper understanding of the Confrontation

Clause.  *See id*. at 60-68.  The Court therefore abrogated *Roberts* as applied to testimonial hearsay

11

statements, concluding that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 68-69. In *Crawford*, the Supreme Court left "for another day any effort to spell out a comprehensive definition of 'testimonial.'" *Crawford*, 541 U.S. at 68. The Court did, however, provide some guidance. Specifically, the Court provided three possible "formulations of th[e] core class of 'testimonial' statements":

> [1] *ex parte* in-court testimony or its functional equivalent–that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; [2] extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; [and] [3] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at 51-52 (internal quotations and citations omitted). While the Court declined to adopt any of these three formulations, the Court noted that the term "testimonial," whatever else it may cover, "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68.

*Crawford* establishes a confrontation rule with respect to "testimonial" statements; it has no application to non-testimonial hearsay. Because following *Crawford* the Supreme Court has clarified that the Confrontation Clause is not at all concerned with non-testimonial hearsay, this Court should conclude that *Roberts* has no application here. In *Crawford*, the Court suggested, but did not definitively rule, that the Confrontation Clause is limited to regulating the introduction of testimonial hearsay, and has no application at all to the admission at trial of non-testimonial hearsay. The Court explained that "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law–as does *Roberts*,

12

and as would an approach that exempted all such statements from Confrontation Clause scrutiny altogether." *Crawford*, 541 U.S. at 68. Immediately following *Crawford*, several courts concluded that *Roberts* remained applicable to non-testimonial hearsay, observing:

> [t]he lynchpin of the *Crawford* decision thus is its distinction between testimonial and nontestimonial hearsay; simply put, the rule announced in *Crawford* applies only to the former category of statements. . . . [U]nless a particular hearsay statement qualifies as "testimonial," *Crawford* is inapplicable and *Roberts* still controls.

*United States v. Hendricks*, 395 F.3d 173, 179 (3d Cir. 2005); *see also*, *Horton v. Allen*, 370 F.3d 75, 83-84 (1st Cir. 2004); *United States v. Johnson*, 354 F. Supp. 2d 939, 964 (N.D. Iowa 2005); *United States v. Savoca*, 335 F. Supp. 2d 385, 391-92 (S.D.N.Y. 2004). Regardless of whether this reading of the *Crawford* dictum was correct, the Supreme Court has since clarified that the Confrontation Clause is simply not implicated by the introduction of non-testimonial hearsay. In *Davis v. Washington*, 547 U.S. 813 (2006), the Court explicitly addressed this question of "whether the Confrontation Clause applies only to testimonial hearsay," *id*. at 823, and in doing so abrogated *Roberts* in whole. The Court noted that the answer to this question was suggested in *Crawford*, when the *Crawford* decision explained that the Confrontation Clause focuses on "witnesses" who give "testimony." *Id*. at 823-24 (discussing *Crawford*, 541 U.S. at 51). The *Davis* Court explained that "[a] limitation so clearly reflected in the text of the constitutional provision must fairly be said to mark out not merely its 'core,' but its perimeter." *Id*. at 824 Thus, where nontestimonial hearsay is at issue, the Confrontation Clause is not implicated at all, and need not be considered. *See Whorton v. Bockting*, 549 U.S. 406, 420 (2007) ("Under *Roberts*, an out-of-court nontestimonial statement not subject to prior cross-examination could not be admitted without a judicial determination regarding reliability. Under *Crawford*, on the other hand, the Confrontation Clause has no application to such statements and therefore permits their admission even if they lack indicia

13

of reliability."); *United States v. Pugh*, 273 Fed. Appx. 449, 454 (6th Cir. 2008); *United States v. Feliz*, 467 F.3d 227, 231 (2d Cir. 2006).

In *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), the Court held that a forensic laboratory report, created specifically to serve as evidence in a criminal proceeding, constituted testimonial hearsay for Confrontation Clause purposes, and that such a report may not be introduced without the prosecution offering a live witness competent to testify to the truth of the report's statements. *See Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2709 (2011) (discussing *Melendez-Diaz*, 557 U.S. at 310-11). In *Bullcoming* the Court clarified that under *Melendez-Diaz*, the prosecution may not present "surrogate" testimony by an analyst that did not sign the report or observe or perform the tests reflected in the report; rather, "[t]he accused's right is to be confronted with the analyst who made the certification." *Bullcoming*, 131 S. Ct. at 2710.

2.      *Analysis*

a.  *Lab Technician Testimony*

At trial, the prosecution presented the testimony of David Vroman, a firearms analyst assigned to the Forensic Science Division of the Michigan State Police. Upon stipulation of the parties, Vroman was qualified as a firearms and tool-mark identification expert. *See* Jury Trial Tr., dated 12/5/06, at 23-24. Vroman testified that he examined the four bullets submitted for analysis, and determined that they all came from the same gun. *See id*. at 34-35. He also testified that the four bullet casings he examined were all fired from the same gun. *See id*. at 40. Vroman then testified, in response to a question from the prosecutor, that an independent examiner looked at his examination and came to the same conclusion. *See id*. at 41. This latter testimony, petitioner contends, violated his right to confront the witnesses, namely, the other examiner who confirmed

14

Vroman's results.[4]  The Court should conclude that petitioner is not entitled to habeas relief on this claim, because any error was harmless.

Even assuming that (a) petitioner can benefit from *Melendez-Diaz* and *Bullcoming*, which were decided after his trial and direct appeal, (b) petitioner could establish a denial of confrontation with respect to Vroman's testimony, and (c) petitioner could establish cause to overcome his default of this claim through the ineffective assistance of counsel,[5] petitioner is not entitled to relief if the error was harmless.  A habeas petitioner who establishes a constitutional error is entitled to habeas relief only if the error "'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also*, *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (explaining that *Brecht* harmless error standard applies on habeas review regardless of whether or under what standard the state court conducted harmless error review).  Confrontation Clause violations are subject to harmless error analysis.  *See Lilly v. Virginia*, 527 U.S. 116, 139-40 (1999).[6]

Here, there can be no doubt that the error was harmless.  Vroman was the principle examiner of the bullets, and the author of the report.  He testified with respect to, and was cross-examined

---

[4]Petitioner does not contend that there was any error in the admission of the report, and it is clear that there was not.  Vroman authored the report, and thus under *Melendez-Diaz* and *Bullcoming* the prosecution could introduce the report subject to cross-examination of Vroman.  Nor, as in *Melendez-Diaz*, was any report introduced even though the author of the report was not subject to cross-examination.

[5]As explained below, *see infra* Part G, petitioner cannot show that trial and appellate counsel were ineffective for failing to raise a confrontation claim based on *Melendez-Diaz* and *Bullcoming*.  Thus, counsel's alleged ineffectiveness does not establish cause to overcome his procedural default with respect to this claim.

[6]Respondent explicitly argues in her answer that the error was harmless.  *See* Answer, at 70-71.  Thus, this is not a case in which the Court must decide whether to consider the matter *sua sponte*.  *See Gover v. Perry*, 698 F.3d 295, 300-01 (6th Cir. 2012).

about, his own actions and conclusions.  The confrontation violation asserted by petitioner consisted of a brief, isolated statement that his results were independently reviewed before the report was actually authored.  Further, his testimony related only to the fact that the bullets were all fired by the same gun.  Whether the bullets came from the same gun was simply not an issue at trial. Petitioner did not, for example, assert a defense of self-defense based on someone else firing a gun at him.  Petitioner's defense was simply that he was not the person who fired the shots.  Indeed, counsel's cross-examination of Vroman did not challenge Vroman's conclusion that the bullets came from the same gun, but explored other matters relating to identification of the perpetrator, such as fingerprints on the casings and how a person could test positive for gunshot residue.  Petitioner does not address respondent's harmless error argument in his reply, and thus does not explain how Vroman's brief statement that another examiner confirmed his findings on a matter collateral to the issues at trial in any way had a substantial and injurious effect in determining the jury's verdict.  In light of the limited nature of the error, the fact that it was on a collateral matter that petitioner did not challenge at trial, and the evidence introduced at trial, the Court should conclude that any confrontation error was harmless.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Officer Richardson's Testimony

Petitioner also contends that his confrontation rights were violated by the testimony of Officer Randall Richardson regarding an out-of-court statement by an unidentified witness which provided him with petitioner's last name.  Richardson testified that when he arrived at the scene, it was "chaos."  *See* Jury Trial Tr., dated 11/30/06, at 209.  He spoke with Alita Evans, one of the victims, and she identified the shooter and told Richardson that the shooter's name was Daryl.  *See*

16

*id.* at 214.[7]  After Evans was taken away in the ambulance, Richardson approached a group of people

on the sidewalk and asked them if they had seen anything.  Eventually, an unidentified female

stated:  "I know who Daryl is.  His last name is Waldon."  *Id.* at 216.  Petitioner contends that the

introduction of this statement violated his right to confront the witness.

As with petitioner's previous confrontation claim, even assuming that this statement

constituted testimonial hearsay and its introduction violated petitioner's right to confront the

witness, any error was harmless.  The unidentified declarant did nothing more than provide a last

name for the "Daryl" identified by Evans.  Nothing in her statement accused petitioner of being the

shooter.[8]  That accusation came from Evans, not from the unidentified female declarant.  The most

that can be said for this statement is that it confirmed that petitioner was at the dance hall where the

shooting occurred, but that fact was uncontested at trial.  *See* Trial Tr., dated 11/30/06, at 161, 163

---

[7]Petitioner does not contend that Richardson's testimony regarding Evans's statements violated his right to confront the witnesses, and for good reason.  Evans testified at trial and was subject to cross-examination.  As the Supreme Court has explained, "where the declarant is not absent, but is present to testify and to submit to cross examination, our cases, if anything, support the conclusion that the admission of his out of court statements does not create a confrontation clause problem."  *Green*, 399 U.S. at 162.  Thus, "the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination."  *Id.* at 158; *see also*, *United States v. Brassard*, 212 F.3d 54, 58 (1st Cir. 2000); *United States v. Barrett*, No. 88-5081, 1989 WL 68812, at *4 (4th Cir. June 16, 1989).

[8]In his brief, petitioner repeatedly characterizes the out-of-court statement as identifying petitioner as the shooter.  *See* Pet'r's Br., at 11 ("Obviously, a statement by someone there at the scene of the shooting giving the name of Daryl Waldon as the shooter . . ."); *id.* at 13 ("If there is to be testimony that Daryl Waldon committed the shooting, that testimony must be given by people who have personal knowledge of the facts."); *id.* at 16 ("By allowing this testimony, the trial court put Petitioner Waldon in the same position Sir Walter Raleigh faced in 1603.  An unproduced person said he was present and committed the shooting. . . .").  This characterization is simply inaccurate.  The entirety of Richardson's testimony regarding the statement was that the declarant said: "I know who Daryl is.  His last name is Waldon."  Trial Tr., dated 11/30/06, at 216.  Richardson did not testify that this declarant claimed to have seen the shooting or accused petitioner of being the shooter, and the statement itself does not do so.  It merely provided the last name of the "Daryl" that had been identified by another witness.

17

(defense counsel's opening statement).  Both Purry and Evans testified that they knew petitioner and identified petitioner as the shooter at trial.  *See* Trial Tr., dated 12/1/06, at 76-81, 118-19.  The out of court statement merely informed the jury about how Richardson came up with the last name of the "Daryl" identified by Evans.  It did not itself identify petitioner as the shooter, or otherwise accuse petitioner of anything.  In light of the limited nature of this statement and the evidence against petitioner from the victims that actually identified him as the shooter, the introduction of this statement was harmless.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Failure to Give Manslaughter Instruction (Claim III)*

In his third claim, petitioner contends that he was denied a fair trial by the trial court's failure to instruct the jury on manslaughter.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Although the Eighth Amendment and the Due Process Clause require that a trial court instruct the jury on lesser included offenses in the context of a capital case, *see Beck v. Alabama*, 447 U.S. 625, 637-38 (1980) (trial court required to instruct *sua sponte* on lesser included offenses where the failure to do so would result in the jury being given an "all or nothing" choice of convicting on the capital charge or acquitting the defendant), "the Constitution does not requires a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001).  As the Sixth Circuit has noted, even where a lesser offense instruction is requested, the failure of a court to instruct on a lesser included or cognate offense in a non-capital case is generally "not an error of such magnitude to be cognizable in federal habeas corpus review." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc); *see also, Scott v. Elo*, 302 F.3d 598, 606 (6th

Cir. 2002). At a minimum, there is no clearly established Supreme Court law which requires the giving of a requested lesser offense instruction in the non-capital context, as is required for habeas relief under § 2254(d)(1). *See Samu v. Elo*, 14 Fed. Appx. 477, 479 (6th Cir. 2001); *Kuroda v. Bell*, No. 2:07-CV-12310, 2007 WL 1657410, at *2 (E.D. Mich. June 7, 2007) (Cohn, J.); *Adams v. Smith*, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003) (Tarnow, J.).

Recognizing this rule, petitioner attempts to argue that even if there was no constitutional right to a lesser offense instruction, he does have a constitutional right to have the jury instructed on his theory of the case, a right that was violated in this case by the failure to give the manslaughter instruction. Petitioner's argument repackaging his lesser offense instruction claim into a theory of the case instruction claim, however, would seem to apply any time a trial court fails to instruct on a lesser offense, and thus would effectively abrogate the clearly established rule that failure to instruct on a lesser offense does not raise a constitutional claim cognizable on habeas review. Petitioner offers no authority to support this creative argument, and I have been unable to locate any such authority. In any event, even when viewed as a theory of the case instruction claim, petitioner is not entitled to habeas relief. It is well established that a court's failure to give an instruction on a defense theory of the case "does not deprive the defendant of his constitutional right to due process if the evidence produced during trial was insufficient to warrant such an instruction." *Allen v. Morris*, 845 F.2d 610, 617 (6th Cir. 1988); *see also*, *Gimotty v. Elo*, 40 Fed. Appx. 29, 33-34 (6th Cir. 2002).

"Under Michigan law, 'voluntary manslaughter is an intentional killing committed under the influence of passion or hot blood produced by adequate provocation, and before a reasonable time has passed for the blood to cool and reason to resume its habitual control.'" *Todd v. Stegal*, 40 Fed.

Appx. 25, 29 (6th Cir. 2002) (quoting *People v. Fortson*, 202 Mich. App. 13, 19, 507 N.W.2d 763,

767 (1993)).  In other words, "to show voluntary manslaughter, one must show that the defendant

killed in the heat of passion, the passion was caused by adequate provocation, and there was not a

lapse of time during which a reasonable person could control his passions."  *Mendoza*, 468 Mich.

at 535-36, 664 N.W.2d at 690.  Not every form of provocation, however, will suffice to negate the

malice necessary for murder.  As the Michigan Supreme Court has explained,

> [t]he provocation necessary to mitigate a homicide from murder to manslaughter is
> that which causes the defendant to act out of passion rather than reason. . . .
>      In addition, the provocation must be adequate, namely, that which would
> cause the reasonable person to lose control.  Not every hot-tempered individual who
> flies into a rage at the slightest insult can claim manslaughter.  The law cannot
> countenance the loss of self-control; rather, it must encourage people to control their
> passions.

*Pouncey*, 437 Mich. at 389, 471 N.W.2d at 350; *see also*, *People v. Sullivan*, 231 Mich. App. 510,

518, 586 N.W.2d 578, 582 (1998).  The trial court refused to give a manslaughter instruction,

concluding that petitioner had failed to present any evidence of adequate provocation.  *See* Trial Tr.,

dated 12/7/06, at 6-7.  The Michigan Court of Appeals agreed, concluding as a matter of law that

"no reasonable jury could find that the provocation was adequate" under the evidence presented.

*See Waldon*, 2008 WL 1914788, at *2.  It is well established that "[w]hich acts constitute the

elements of a state crime is a question generally answerable only by the state legislature and state

courts."  *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002) (citing *Mullaney v. Wilbur*, 421

U.S. 684, 691 (1975) ("This Court ... repeatedly has held that state courts are the ultimate expositors

of state law . . . .")).  The "federal constitution does not dictate to the state courts precisely how to

interpret their own criminal statutes."  *Id*.  Here, the state courts determined that the alleged

provocation–Purry's shove of petitioner–was inadequate as a matter of state law, thus he cannot

show that he was denied a fair trial or his right to present a defense by the absence of a manslaughter instruction.  *See Cunningham v. Berghuis*, No. 5:08-cv-14283, 2010 WL 3702547, at *9-*10 (E.D. Mich. July 19, 2010) (Komives, M.J.), *report adopted*, 2010 WL 3702544 (E.D. Mich. Sept. 16, 2010) (O'Meara, J.); *Scales v. Jackson*, No. 05-CV-74914, 2008 WL 4792680, at *10 (E.D. Mich. Oct. 27, 2008) (Edmunds, J.).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Ineffective Assistance of Counsel (Claims IV & V)*

Finally, petitioner contends that both trial and appellate counsel rendered constitutionally ineffective assistance.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed  questions of law and fact.  *Id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id*. at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id*.  With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance.  *See*

*id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common

custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

With respect to appellate counsel, it is well established that "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).  Although it is "possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was incompetent." *Id*.  As a general rule, it is "'only when ignored issues are clearly stronger than those presented [that] the presumption of effective assistance of counsel [can] be overcome.'" *Id*. (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).  Further, in the appellate counsel context, to demonstrate prejudice petitioner must show a reasonable probability that his claims would have succeeded on appeal.  *See id*. at 285-86; *Benning v. Warden*, 345 Fed. Appx. 149, 155-56 (6th Cir. 2009); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).

2.    *Trial Counsel*

Petitioner contends that trial counsel was ineffective for: (1) failing to object to the confrontation clause violations; (2) failing to object to irrelevant testimony; and (3) eliciting damaging testimony.  The Court should conclude that petitioner is not entitled to habeas relief on

23

these claims.

### a. Failing to Raise Confrontation Objections

Petitioner cannot show that counsel was ineffective for failing to object to the hearsay evidence which he claims violated his right to confront the witnesses. With respect to Vroman's testimony, petitioner cannot show that counsel's performance was deficient. Even if that testimony would be barred under *Melendez-Diaz* and *Bullcoming*, petitioner cannot show that counsel was ineffective for failing to object at the time of trial. Petitioner was tried after *Crawford* but well before the Supreme Court's decision in *Melendez-Diaz*. It is well established that counsel's performance must be evaluated "as of the time of counsel's conduct," *Strickland*, 466 U.S. at 690, and therefore that counsel cannot be deemed ineffective for failing to anticipate a change in the law. *See Nichols v. United States*, 501 F.3d 542, 545 (6th Cir. 2007); *Lott v. Coyle*, 261 F.3d 594, 609 (6th Cir. 2001). At the time of petitioner's trial, the overwhelming majority of courts held that forensic reports did not constitute testimonial hearsay under *Crawford*. *See Likely v. Ruane*, 681 F. Supp. 2d 107, 110 (D. Mass. 2010); *see also*, *Melendez-Diaz*, 557 U.S. at 330 (Kennedy, J., dissenting) (noting that the majority's holding was contrary to decision in "at least 35 states and six Federal Courts of Appeals."). In light of the state of the law at the time of petitioner's trial, counsel cannot be deemed ineffective for failing to raise a *Melendez-Diaz* type challenge to Vroman's testimony. *See Hutchins v. Ryan*, CV 07-5796, 2011 WL 7429398, at *33 (Apr. 29, 2011), *magistrate judge's report adopted*, 2012 WL 528145 (C.D. Cal. Feb. 15, 2012); *Moorehouse v. DeCamp*, No. 09-980, 2010 WL 2367499, at *5 (May 21, 2010), *magistrate judge's report adopted*, 2010 WL 2367486 (D. Or. June 10, 2010).

Further, with respect to the hearsay statements admitted through both Vroman's and

24

Richardson's testimony, as explained above any error in the admission of that testimony was harmless. "The prejudice question, for purposes of an ineffective assistance of counsel claim, 'is essentially the same inquiry as made in a harmless-error analysis.'" *Johnson v. Renico*, 314 F. Supp. 2d 700, 711 (E.D. Mich. 2004) (Gadola, J.) (quoting *Arnold v. Evatt*, 113 F.3d 1352, 1362 (4th Cir. 1997)). Because the introduction of this evidence was harmless, petitioner cannot show that he was prejudiced by counsel's failure to object. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Failing to Object to Irrelevant Evidence

Petitioner next contends that trial counsel was ineffective for failing to object to irrelevant evidence from the deceased victim's mother. The victim's mother briefly testified as to the circumstances of finding out about her son being shot and his later death at the hospital. *See* Jury Trial Tr., dated 12/6/06, at 42-44. Petitioner claims that "she was called to give testimony about what a good boy Anthony was, and the whole series of events where she and other family members were horrified to learn about his being shot and then dying," and was "prejudicial because the good character of the deceased, and the horror of his family upon learning of his injury and death, would affect a reasonable jury with strong feelings of sympathy . . . ." Pet'r's Br., at 28. Petitioner's argument wholly mischaracterizes the testimony. At no point during her brief testimony did the victim's mother describe her or her family's "horror," nor did she provide any testimony relating at all to her son's character. The testimony is very matter-of-fact. Petitioner does not argue that the prosecutor later referenced this testimony in any attempt to appeal to the jury's sympathy. In light of the limited, benign nature of this testimony, and the other evidence against petitioner, petitioner cannot show a reasonably probability that the result of the proceeding would have been different had

25

counsel objected to this testimony.

### c. Eliciting Harmful Testimony

Petitioner also contends that counsel was ineffective for eliciting harmful testimony.  First, petitioner argues that counsel was ineffective for eliciting testimony that petitioner did not speak with the police.  During cross-examination of Officer Randy Costanzo, one of the officers who arrested petitioner, counsel asked: "You mentioned a cut lip.  Did he give you any indication where that came from?"  Costanzo replied, "No, he did not make a statement to me." Jury Trial Tr., dated 12/1/06, at 242.  Petitioner contends that the only possible effect of this question was to enable the officer to testify that petitioner invoked his right to remain silent, a subject of testimony that would have been impermissible had it been introduced by the prosecution.  Counsel did not ask, however, whether petitioner had given a statement in general.  Moreover, there was no other testimony at trial, from Costanzo or any other witness, regarding whether petitioner had invoked his right to remain silent, nor did the prosecutor in any way argue that petitioner's silence should be used against him. In context, counsel's question was merely an attempt to elicit an explanation for the cut, and was treated that way by all the parties.  Thus, petitioner cannot show that counsel was ineffective for asking this question.

Second, petitioner argues that counsel was ineffective for eliciting information that the police investigated no other suspects.  During cross-examination of Detective Timothy Maniere, counsel asked: "Out of the literally hundreds of hours of personal manpower and other officers assigned to this case, were you able to identify any other suspects besides my client?"  Jury Trial Tr., dated 12/6/06, at 19.  Maniere responded, "No, I was not."  Petitioner cannot show that counsel was ineffective for asking this question.  Counsel's strategy was to discredit the prosecution's case

26

through two avenues of attack: (1) an attack on the credibility of the eyewitness, in particular Purry; and (2) an attack on the adequacy of the police investigation, which failed to include an investigation of other possible suspects. Counsel's question was directly related to, and supportive of, this line of attack. Counsel was highlighting for the jury that despite the vast resources employed by the police in this case, they never considered any person other than petitioner despite having reason to do so. This was a theme counsel repeatedly turned to during closing argument. *See* Jury Trial Tr., dated 12/7/06, at 22 ("One of the officers testified in his report there was another suspect there and he had on a black and white coat. He matched the description of Daryl Waldon. But, guess what? Guess how many people they actually interviewed in connection with this besides him? None. No other suspect. We got our guy."); *id*. at 22-23 ("Out of anywhere from 450 to 800 people . . . they might have spoken to a handful of witnesses."); *id*. at 23 ("In a dark, crowded, smoky chaotic situation when there was testimony given that Mr. Purry had been in a previous altercation, suddenly now everyone knows it's Mr. Waldon because of this coat. Even though it was identified and described in detail that there was someone else they were looking at. There was a photo of someone that matched that description. I don't know why they didn't pursue that. I guess they felt they found their man."); *id*. at 25 ("[T]he police work in this case was less than stellar. . . . For God sakes there was a video camera right outside pointing at the door. What if we had that information. We could see how many people parading in and out with a black and white jacket. We don't have that. I asked the officer, well, didn't you think it was important to go retrieve that? Well, someone was on the cell phone, they couldn't get back to me. That's crucial and we don't have it. We don't have it. You know, people, people do things for a reason and the police department in this case is an overwhelmed police department. They accepted more work than you can imagine and it's human

nature in my opinion that once they feel they got a good strong candidate, he matches the profile of what's been put in here, the police report he's about the same size, we got our guy."). In light of the evidence presented a trial, this was a reasonable strategy to pursue, and the fact that it was ultimately unsuccessful does not show that counsel was ineffective. *See Brown v. Crosby*, 249 F. Supp. 2d 1285, 1322-23 (S.D. Fla. 2003) (internal quotation omitted) ("the fact that a particular defense was unsuccessful does not prove ineffective assistance of counsel, for counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy."); *Jones v. Hollins*, 884 F. Supp. 758, 765 (W.D.N.Y.), *aff'd*, 89 F.3d 826 (2d Cir. 1995). And because counsel's question was directly relevant to and supportive of counsel's reasonably chosen defense strategy, petitioner cannot show that counsel was ineffective for eliciting this testimony.

### 3.    *Appellate Counsel*

Finally, petitioner contends that appellate counsel was ineffective for failing to raise his postconviction motion and habeas claims on direct appeal. As explained above, each of these claims is without merit, and thus petitioner cannot show that appellate counsel was deficient for failing to raise these claims, or that he was prejudiced by counsel's failure to do so. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### H.    *Recommendation Regarding Certificate of Appealability*

### 1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that

"[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'"" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by §

29

2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.   *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. With respect to petitioner's confrontation claims, it is clear that the introduction of the allegedly improper hearsay testimony was harmless in light of the nature of that testimony and the evidence adduced at trial. Thus, the resolution of petitioner's confrontation claims is not reasonably debatable. It follows that the resolution of petitioner's related ineffective assistance of counsel claims is not reasonably debatable. Because it is clear that a trial court's failure to instruct on a lesser included offense does not raise a cognizable habeas claim, and because in any event petitioner was not entitled to a manslaughter instruction as a matter of state law, the resolution of petitioner's jury instruction claim is not reasonably debatable. Because petitioner can show no prejudice from the testimony of the victim's mother or counsel's question to Officer Costanzo regarding the cut on petitioner's lip, the resolution of these ineffective assistance claims is not reasonably debatable. Further, because counsel's question to Detective Maniere was relevant to, and supportive of, counsel's reasonable defense strategy, the resolution of this ineffective assistance claim is not reasonably debatable. Finally, because the resolution of petitioner's underlying claims is not

30

reasonably debatable, it follows that the resolution of petitioner's ineffective assistance of appellate counsel claim is not reasonably debatable. Accordingly, the Court should deny petitioner a certificate of appealability.

I.     *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.     <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length

unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


      s/ Paul J. Komives\
      PAUL J. KOMIVES\
      UNITED STATES MAGISTRATE JUDGE

Dated: _____9/5/13_____


## CERTIFICATION OF SERVICE

I hereby certify that a copy of this Order was mailed to counsel of record on September 5, 2013.


      s/  Carol J. Bethel\
      Case Manager