UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARYL WALDON,

                Petitioner,

                                                    Case No. 12-cv-14649
vs.                                                 HON. GERSHWIN A. DRAIN

SHERRY BURT,

                Respondent.

_____/

**OPINION AND ORDER ACCEPTING IN PART REPORT AND RECOMMENDATION [#15], DENYING APPLICATION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY**

**I.    INTRODUCTION**

Petitioner Daryl Waldon filed through counsel his Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, alleging that he is incarcerated in violation of his constitutional rights. Petitioner challenges his 2006 conviction, following a jury trial in the Macomb County Circuit Court, for second degree murder, MICH. COMP. LAWS § 750.317; two counts of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, and three counts of possession of a firearm with intent to commit a felony, MICH. COMP. LAWS § 750.227b.  On January 27, 2007, the trial court sentenced Petitioner to a term of 31-50 years imprisonment on the second degree murder conviction, a concurrent sentence of 15-30 years imprisonment on the assault conviction, and a mandatory consecutive term of two years imprisonment on the felony-firearm conviction.

Petitioner raises the following claims in his Application:

    I.      TESTIMONY OF ONE LAB WORKER ABOUT THE FINDINGS OF ANOTHER LAB WORKER VIOLATED PETITIONER'S CONFRONTATION RIGHTS

    II.     POLICE TESTIMONY THAT A PERSON IN THE CROWD DECLARED THE SHOOTING WAS DONE BY DARYL WALDON VIOLATED PETITIONER'S CONFRONTATION RIGHTS

    III.    THE COURT DENIED PETITIONER DUE PROCESS OF LAW BY REFUSING TO INSTRUCT ON THE DEFENSE THAT THE CRIME WAS ONLY MANSLAUGHTER AND NOT MURDER

    IV.    PETITIONER WAS PREJUDICED BY INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL

    V.     PETITIONER WAS PREJUDICED BY INEFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL

This matter was referred to Magistrate Judge Paul J. Komives and he issued a Report and Recommendation on September 5, 2013, recommending that the Court deny Petitioner's Application for a Writ of Habeas Corpus and deny a Certificate of Appealability. The Petitioner timely filed objections to the Report and Recommendation, which are now before the Court.

Upon review of Magistrate Judge Komives's Report and Recommendation, Petitioner's § 2254 Application, Respondent's Answer, Petitioner's Reply in Support, the Rule 5 Materials, and Petitioner's Objections, the Court finds that the Magistrate Judge correctly concluded that Petitioner has failed to demonstrate that he is entitled to habeas corpus relief. The Court will therefore deny Petitioner's Application for a Writ of Habeas Corpus. The Court further finds that the Magistrate Judge correctly concluded that a Certificate of Appealability should be denied. Accordingly, the Court declines to issue a Certificate of Appealability in this matter.

**II.  FACTUAL BACKGROUND**

The Magistrate Judge relied on the recitation of the record by the Michigan Court of Appeals

during Petitioner's direct appeal. Petitioner has not objected to this; and the state court's factual findings are entitled to the presumption of correctness unless Petitioner rebuts the presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (a determination of a factual issue made by a state court shall be presumed correct and the petitioner shall have the burden of rebutting the presumption by clear and convincing evidence); *Treesh v. Bagley*, 612 F.3d 424, 430-31 n.1 (6th Cir. 2010); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)).

> Defendant's convictions stem from a shooting that occurred at a New Year's Eve celebration on January 1, 2006, at a dance hall. According to prosecution witnesses, defendant intended to shoot Erron Purry, and did so four times. However, while shooting Purry, defendant also shot and killed Anthony McCommons, and wounded a woman in the leg.
>
> Purry testified that he was on the dance floor at approximately 2:00 a.m. when defendant bumped into him. Purry recognized defendant from middle and high school and the neighborhood, and thought that the "bump" was "aggressive" rather than a "dancing bump." Purry retaliated by pushing defendant away from him. After he pushed defendant away, defendant drew a handgun and shot him. As Perry tried to get away, he was shot several times, including once in the back. During cross-examination, Purry testified that he and defendant had not had any previous disagreements. Other prosecution witnesses corroborated Purry's version of the shooting. Defendant presented the testimony of an eyewitness who stated that while defendant and Purry engaged in a minor altercation, they had ended it several minutes before the shooting occurred. The witness maintained that defendant did not shoot Purry or the others.

*See* Dkt. No. 10-11 at 1. The Michigan Court of Appeals affirmed Petitioner's conviction and sentence on direct appeal, *People v. Waldon*, No. 276152, 2008 WL 1914788 (Mich. Ct. App. May 1, 2008), and the Michigan Supreme Court denied Petitioner leave to appeal in a standard order, *People v. Waldon* 482 Mich. 977; 754 N.W.2d 887 (2008).

Thereafter, Petitioner filed a Rule 6.500 Motion for Relief from Judgment in the state trial court, which denied Petitioner's motion on March 10, 2010. Both the Michigan Court of Appeals

-3-

and the Michigan Supreme Court denied Petitioner leave to appeal in standard orders. *See People v. Waldon*, No. 302992 (Mich. Ct. App. Nov. 22, 2011); *People v. Waldon,* 492 Mich. 853; 817 N.W.2d 92 (2012). Petitioner filed the instant habeas corpus action on October 21, 2012. He raises the same claims he raised during his Rule 6.500 proceedings.

### III.  LAW & ANALYSIS

#### A.  Standard of Review

The standard of review to be employed by the court when examining a report and recommendation is set forth in 28 U.S.C. § 636. This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This Court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

#### B.  Procedural Default (Objection No. 1)

Petitioner objects to the Magistrate Judge's conclusion that "all issues except ineffective assistance of appellate counsel" have been defaulted. *See* Pet.'s Obj. at 1. As an initial matter, Magistrate Judge Komives did not conclude that **all** of Petitioner's claims are procedurally defaulted save for his ineffective assistance of appellate counsel claim, rather he held that "[a]lthough petitioner's first, second, and fourth claims are defaulted, the Court should conclude that Petitioner's fifth claim alleging ineffective assistance of appellate counsel is not barred, and this conclusion requires the Court to consider each of the claims on the merits." Rep. and Rec. at 4-5.

While not dispositive of the outcome, the Court cannot entirely agree with some of the Magistrate Judge's conclusion regarding procedural default. Here, both the Michigan Supreme Court and the Michigan Court of Appeals denied Petitioner leave to appeal in form orders, thus this

Court must review the decision of the state trial judge to ascertain whether the state court relied on an adequate and independent state rule to deny Petitioner's claims. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010). A review of the state circuit court's decision suggests that only part of claim IV is procedurally defaulted. Moreover, it appears that the state trial court reviewed part of Petitioner's ineffective assistance of appellate counsel claim, claim V, on the merits: Specifically, the court held:

> The Court has reviewed all five of Defendants's arguments and has determined that they all boil down to one conclusion: Defendant is claiming ineffective assistance of counsel during both the trial and in the appellate process. Defendant concedes that the Court of Appeals has already ruled on his argument regarding the failure to instruct the jury that the crime was only manslaughter and not murder. Accordingly, the Court will not revisit this argument.
> With respect to Defendant's other arguments regarding ineffective assistance of counsel, the Court is not persuaded that he has met his burden. Defendant claims that counsel was ineffective for failing to object to the testimony of David Vroman, and appellate counsel was ineffective in failing to raise the issue on appeal. The case upon which Defendant relies for this argument was decided two years after his trial. *Melendez-Dias v. Massachusetts,* — US—; 129 S. Ct. 2527 (2009). Defendant has proffered no other law for the inadmissibility rendered prior to his trial, and further admits that there was prior authority that may have allowed the objected to testimony. To this end, there is no guarantee that trial counsel would have succeeded in having the testimony excluded, therefore Defendant cannot demonstrate that trial counsel was ineffective. Since this is the case, Defendant's appellate counsel's failure to raise the issue is properly considered presumptively sound trial strategy.
>
> Defendant further argues that trial counsel was ineffective in failing to object to testimony of Officer Richardson who testified that he asked, at the scene, if anyone knew a potential suspect named Daryl, and a black female gave him Defendant's name. Even if this testimony had been stricken, there is little likelihood that he would have been acquitted but for this testimony insofar as several other witnesses identified Defendant as the shooter. Even if the Court were to consider this error, Defendant cannot show that counsel's performance fell below an objective standard of reasonableness that so prejudiced him so as to deprive him of a fair trial.
> The remaining arguments relating to ineffective assistance of counsel are also without merit, or could have been raised in earlier petitions. Defendant has not established good cause or actual prejudice under the rules so as to permit him to now raise those issues.

Thus, it appears the state circuit court reviewed claims I, II, and portions of Petitioner's ineffective assistance of trial and appellate counsel claims, specifically the arguments concerning Vroman's and Richardson's testimony, on the merits. In rejecting these claims, the state court did not invoke a state procedural bar. As such, it cannot be concluded that the state court "clearly and expressly" denied these claims based on a state procedural rule, thus federal review of the merits of these claims would not be barred by the procedural default doctrine. *See Harris v. Reed*, 489 U.S. 255, 263 (1989).

It further appears that the circuit court rejected Petitioner's remaining arguments in support of his ineffective assistance of trial and appellate counsel claims because they lacked merit, as well as because Petitioner failed to raise them during his direct appeal. Thus, these latter claims are properly defaulted because the state court "clearly and expressly" relied on M.C.R. 6.508(D)(3),[1] which is an independent and adequate state procedural rule that bars federal habeas corpus review. It is of no consequence that the trial court may have discussed the merits of these claims in addition to invoking the provisions of Rule 6.508(D)(3) in rejecting Petitioner's remaining ineffective assistance of trial counsel claims and the Court may properly rely on the doctrine of procedural

---

[1] Only the ineffective assistance of trial counsel claims would be subject to the procedural default doctrine because ineffective assistance of appellate counsel cannot be raised on direct appeal, thus to the extent the circuit court invoked M.C.R. 6.508(D)(3) to deny Petitioner's ineffective assistance of appellate counsel claims, this would appear to be erroneous. *See Riley v. Jones*, 476 F. Supp.2d 696, 707 (E.D. Mich. 2007); *Hicks v.* Straub, 377 F.3d 538, 558 n.17 (6th Cir. 2004). Moreover, the Court declines to consider Respondent's argument that Petitioner could have raised his ineffective assistance of appellate claims during his direct appeal when he sought leave to appeal to the Michigan Supreme Court because he was represented by different counsel. Since the Court concludes that Petitioner's claims do not warrant habeas corpus relief, it need not resolve the procedural default questions raised herein which involve complicated issues of state law. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

default with respect to these claims. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).

In any event, notwithstanding his conclusion concerning Petitioner's defaulted claims, the Magistrate Judge proceeded to consider the merits of all of Petitioner's claims since ineffective assistance of appellate counsel may constitute sufficient cause for Petitioner's failure to raise his other claims on direct appeal. *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2004). Because the Court agrees with the Magistrate Judge's conclusions with respect to the merits of Petitioner's claims, the Court need not resolve the procedural default issues raised herein. Procedural default is not a jurisdictional bar to review a habeas petition on the merits, and if the procedural default issues raise more questions than the case on the merits, the Court may resolve the claims on the merits without deciding the default issue. *See Falkiewicz v. Grayson*, 271 F. Supp.2d 942, 948 (E.D. Mich. 2003); *see also Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ("[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."). "Judicial economy might counsel giving the [substantive] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural bar issue involved complicated issues of state law." *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). Accordingly, Petitioner's objection is OVERRULED.

        **C.**      **Confrontation Clause Claims (Objection Nos. 2, 4, 5, 6, 10 and 11)**

In his first habeas claim, Petitioner asserts that the testimony of one lab worker about the findings of another unnamed lab worker violated his Confrontation rights. In his second claim, Petitioner argues that an officer's testimony that an unknown person in the crowd mentioned Petitioner's last name also violated his Confrontation rights. The Magistrate Judge concluded that even if Petitioner could overcome his procedural default of these claims, and establish a denial of

his confrontation rights, he is not entitled to relief because any error was harmless. Petitioner objects to these conclusions and argues that the Magistrate Judge relied on the incorrect standard governing the admissibility of hearsay statements under the Confrontation Clause and erroneously concluded that any error was harmless.

During Petitioner's trial, David Vroman, a forensic toolmark unit supervisor with the Michigan State Police, testified that his testing of the firearm showed that all four cartridges were fired from the same gun. *See* Dkt. 10-6 at 35. He further explained that after he performed his examination, another independent examiner looked at the evidence and confirmed his conclusions. *Id.* at 41. Specifically, he testified that:

> A. Once I've made my identifications, before a report is authored, I have an independent examiner look at the evidence and come to his own conclusions. If our conclusions are in agreement, then a report will be authored.
> Q. In this case did you have another independent examiner look at the examination?
> A. Yes, I did.
> Q. And came back with the same conclusion?
> A. Correct.
> Q. And then what do you do after that?
> A. Then the report is authored.

*Id.*

Additionally, during Petitioner's trial, Officer Randall Richardson testified that he responded to a call of a shooting at Araden Hall. *See* Dkt. 10-4 at 208. He spoke with victim Alita Evans who had been shot in the leg. *Id.* at 212-13. Evans indicated that someone named Daryl was the shooter. *Id.* at 214. She stated that she had met Daryl at a prior engagement. *Id.* Richardson subsequently was approached by four females and one of the female bystanders provided Petitioner's last name to Richardson. He testified that:

> A. No. At that time, I – they just stood there on the sidewalk and I pretty much

> said that, you know, if it was you laying there on the ground shot and possibly going to die, I'm sure you would want to speak up and say who did it, especially if you did see what happened. A few more minutes went by, one black female stated "I know who Daryl is. His last name is Waldon."
> Q. Do you know who that was that told you that?
> A. No. As I started to write that down and ask them where they were at inside the hall, a big group came around from the corner, coming out from the exit door and onto McCarther where we were at and they just mingled with the crowd. I could not relocate her.

*Id.* at 216.

The Confrontation Clause of the Sixth Amendment guarantees defendants in criminal prosecutions "the right . . . to be confronted with the witnesses against him." U.S. Const. amend VI. In *Crawford v. Washington*, 541 U.S. 36, 54-55 (2004), the United States Supreme Court held that the Confrontation Clause prohibits the "the admission of testimonial statements of a witness who did not appear at trial unless the witness was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Id*.

In *Melendez-Diaz*, 557 U.S. 305 (2009), the admission of forensic laboratory reports violated the petitioner's Confrontation rights because "the analysts' affidavits were testimonial statements, . . .[thus,] [a]bsent a showing that the analysts were unavailable to testify at trial and that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to "be confronted with" the analysts at trial. *Id.* at 311. Moreover, for Confrontation Clause purposes, the introduction of testimonial forensic laboratory reports is only proper through the witness who personally signs the certification, or personally prepares or observes the test reported on the certification. *See Bullcoming v. New Mexico*, 131 S.Ct. 2705, 2710 (2011).

Here, Petitioner's conviction became final in 2008. Thus, contrary to his arguments, he cannot rely on *Melendez-Diaz*, which was decided in 2009, nor *Bullcoming*, decided in 2011, to

establish entitlement to the writ of habeas corpus. *See Meras v. Sisto*, 676 F.3d 1184, 1188 (9th Cir. 2012); *see also Hurd v. Howes*, No. 11-10600, 2014 U.S. Dist. LEXIS 24862 (E.D. Mich. Feb. 27, 2014); *Baker v. Rapelje*, No. 10-cv-13304, 2013 U.S. Dist. LEXIS 54459 (E.D. Mich. Apr. 17, 2013); *Vega v. Walsh*, 669 F.3d 123, 127-28 (2d Cir. 2012).

In any event, Confrontation Clause violations are subject to harmless error review, thus the Court cannot grant relief unless the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks omitted). In determining whether a Confrontation Clause violation is harmless under *Brecht*, a court should consider the following factors: "(1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall strength of the prosecution's case." *See Jensen v. Romanowski,* 590 F.3d 373, 379 (6th Cir. 2009) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

If the habeas court is left with grave doubt about the likely effect the error had upon the jury's verdict, in other words if "the matter is so evenly balanced . . . as to the harmlessness of the error" the court "should treat the error, not as if it were harmless, but as if it affected the verdict." *O'Neal v. McAninch,* 513 U.S. 432, 435 (1995).

Here, Vroman testified that all of the bullets came from the same gun. This was collateral to the main issue at trial; whether Petitioner was the shooter. Vroman's testimony that another lab technician reviewed his examination and confirmed his conclusions, did not have a substantial and injurious effect on the jury's verdict given that Vroman testified that his *own* testing showed the four

shell casings were fired from the same gun and Vroman was the analyst who prepared the report. Moreover, if the testimony had not been admitted during Petitioner's trial, the state's other evidence against him was compelling, including the eyewitness testimony from victim Erron Purry, who was at the club and watched Petitioner fire his gun at him, and the eyewitness testimony from victim Alita Evans, who also identified Petitioner as the shooter. Both Purry and Evans testified that they knew Petitioner from prior occasions. In fact, Purry attended middle school and high school with Petitioner.

Similarly, the introduction of an out-of-court statement by an unidentified witness during Officer Randall Richardson's testimony did not have a substantial and injurious effect on the jury's verdict even if its introduction violated the Confrontation Clause. This testimony was not critical to the prosecution's case; even if it were not admitted, the prosecution's case was strong considering the surviving victims identified Petitioner as the shooter. Purry had known Petitioner since middle school and Evans met him the previous summer and had seen him "a couple of times" prior to the shooting. *See* Dkt. 10- 5 at 119. When viewed in the context of the entire trial, any error in the introduction of Richardson's hearsay statement by an unknown witness identifying Petitioner's last name did not have a substantial and injurious effect on the jury's verdict.

Accordingly, Objection Nos. 2, 4, 5, 6, 10 and 11 are OVERRULED. Petitioner is not entitled to habeas corpus relief on Claims I and II.

### D.     Due Process Claim (Objection Nos. 7, 8 and 9)

In his third claim for relief, Petitioner argues that the trial court's failure to give a manslaughter instruction violated his due process rights. Petitioner objects to the Magistrate Judge's conclusion that he is not entitled to relief on this claim. On direct appeal, the Michigan Court of

Appeals held:

> In this case, a rational view of the evidence does not support a voluntary manslaughter instruction. The eyewitness testimony, established that defendant was either the initial aggressor, or shot Erron, and McCommons, in response to Erron pushing defendant. No underlying rationale for the shooting presented; and the defense maintained that defendant was not the person who shot Erron. No reasonable jury could find that merely being shoved by someone on the dance floor was adequate provocation for murder. "Not every hot-tempered individual who flies into a rage at the slightest insult can claim manslaughter." *People v. Pouncey*, 437 Mich. 382, 389; 471 N.W.2d 346 (1991). Because no reasonable jury could find that the provocation was adequate, the trial court properly refused to instruct the jury on voluntary manslaughter.

*Waldon*, 2008 WL 1914788, *at 2.

As an initial matter, there is no clearly established Supreme Court law that requires "a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001). Moreover, due process is implicated only where the trial court declines to give an instruction and the evidence introduced at trial was sufficient to support the instruction. *See Allen v. Morris*, 845 F.2d 610, 617 (6th Cir. 1988). Petitioner asserts that witness Alita Evans testified to observing Erron Purry and Petitioner pushing one another and Purry admitted to aggressively bumping Petitioner. Petitioner claims this was sufficient to warrant a manslaughter instruction.

Here, contrary to Petitioner's arguments, the state trial court's decision was not based on an unreasonable determination of the facts in light of the evidence presented during the trial. Adequate provocation is that which would require a reasonable person to lose control. *Pouncy*, 437 Mich. at 389. As such, there was insufficient evidence for a jury to conclude that the crime was manslaughter based on evidence of "pushing" and an "aggressive bump" on the dance floor.

Petitioner's Objection Nos. 7, 8 and 9 are OVERRULED. Petitioner is not entitled to habeas relief on this claim.

E.  **Ineffective Assistance of Counsel Claim (Objection Nos. 12 and 13)**

Petitioner's fifth claim alleges that he was deprived of the effective assistance of counsel during trial where his counsel failed to object to Confrontation Clause violations and irrelevant testimony, as well as elicited damaging testimony. The Magistrate Judge concluded that Petitioner's arguments do not merit habeas corpus relief.

Ineffective assistance of counsel claims are subject to the two-prong performance and prejudice test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Under the performance prong, defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* (citing *Strickland,* 466 U.S. at 687-88). However, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

As to counsel's failure to object to Vroman's and Richardson's testimony, the Magistrate Judge correctly concluded that counsel cannot be faulted for failing to raise a *Melendez-Diaz* or *Bullcoming* type challenge in light of the state of the law during Petitioner's trial. Moreover, because this Court concludes that any error from the admission of Vroman's and Richardson's testimony was harmless, he cannot show the requisite prejudice necessary to establish ineffective assistance of counsel. *See Arnold v. Evatt*, 113 F.3d 1352, 1362 (4th Cir. 1997).

Petitioner also claims his counsel should have objected to sympathy-inducing testimony

-13-

given by the mother of the deceased, who Petitioner argues offered no relevant testimony and only prejudiced him by playing upon the sympathy of the jury. This limited testimony, which was not later referenced by the prosecution in an attempt to induce the jury's sympathy, was also not critical to the main issue at trial; whether Petitioner was the shooter. Counsel could have concluded as a matter of sound trial strategy that it was better to allow the testimony rather than call attention to it through an objection and curative instruction. *See Hardaman v. United States*, 319 F.3d 943, 949 (7th Cir. 2003); *Evans v. Thompson*, 881 F.2d 117, 125 (4th Cir. 1989). Moreover, Petitioner cannot show that if counsel had objected to the testimony, the result of the proceeding would have been different.

Finally, Petitioner claims his counsel was ineffective because of answers received during his cross-examination of two police officers. None of defense counsel's questions clearly sought to elicit information that would have been prejudicial to Petitioner and counsel's questioning was a reasonable strategy given the evidence presented during the trial. Petitioner has not shown that counsel's performance fell below the wide range of reasonable professional assistance.

Objection Nos. 12 and 13 are OVERRULED. Petitioner is not entitled to habeas relief based on ineffective assistance of trial counsel.

### F.     Ineffective Assistance of Appellate Counsel Claim (Objection Nos. 14 and 15)

Petitioner's fifth claim alleges that he was denied the effective assistance of appellate counsel during his direct review based on counsel's failure to raise his Confrontation Clause and ineffective assistance of counsel claims. Contrary to Petitioner's argument, the Magistrate Judge correctly concluded that Petitioner cannot demonstrate ineffective assistance of appellate counsel.

Like ineffective assistance of trial counsel claims, ineffective assistance of appellate counsel

requires a showing of deficient performance and resulting prejudice. *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). A petitioner succeeds on an ineffective assistance of appellate counsel claim if he shows "counsel unreasonably failed to discover nonfrivolous issues," and "a reasonable probability that, but for his counsel's unreasonable failure . . . he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000). When a habeas petitioner alleges his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, a court first examines the merits of the omitted issue. *Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999). Therefore, to evaluate the merits of an ineffective assistance of appellate counsel claim, the Court must assess the strength of the claim that counsel failed to raise. *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel is not ineffective for failing to raise claims that have little or no chance of success. *Goff v. Bagley*, 601 F.3d 445, 468 (6th Cir. 2010).

Here, the Court concludes that there is no reasonable probability that Petitioner would have prevailed during his direct appeal if counsel had raised his Confrontation Clause and ineffective assistance of counsel claims on appeal. As such, the Magistrate Judge correctly concluded that Petitioner was likewise not entitled to relief on this claim.

Objection Nos. 14 and 15 are OVERRULED. Petitioner is not entitled to habeas corpus relief on claim V.

### G.     Harmless Error (Objection No. 16)

Petitioner objects to the Magistrate Judge's conclusions with respect to harmless error. For the reasons identified in this Court's discussion of Petitioner's Confrontation Clause claims, *supra,* Petitioner has not met his burden under harmless error review for the issuance of a writ of habeas corpus. Objection No. 16 is OVERRULED.

**H.     Certificate of Appealability (Objection No. 17**)

Lastly, Petitioner objects to the Magistrate Judge's conclusion that a Certificate of Appealability should be denied. Before petitioner may appeal the court's decision denying his petition for a writ of habeas corpus, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b). The court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3)(B); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F. 3d 1306, 1307 (6th Cir. 1997). A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires that petitioner "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)).

Petitioner raises no justification for concluding that reasonable jurists would debate the Court's conclusion that Petitioner has failed to make a substantial showing of the denial of his constitutional rights. As such, Objection No. 17 is OVERRULED.

**IV.     CONCLUSION**

For the foregoing reasons, Magistrate Judge Paul J. Komives's Report and Recommendation [#15] is ACCEPTED IN PART. Petitioner's Objections [#16] are OVERRULED. Petitioner's Application for a Writ of Habeas Corpus [#1] is DENIED. A Certificate of Appealability shall not issue in this matter.

SO ORDERED.

Dated: March 4, 2014                                   /s/Gershwin A Drain
                                                                    GERSHWIN A. DRAIN

UNITED STATES DISTRICT JUDGE